## LAWTON & UX. *v.* KITTREDGE.

A fact stated in the bill and denied in the answer, is not taken as proved for the purposes of a decree, unless supported by other evidence than the testimony of one witness.

Words used by a vendor, descriptive of the property proposed for sale, must appear to have been intended by him as and for a representation, and intended to be believed by the person addressed, in order to make him chargeable for a false representation. Therefore, where the bill stated that upon the defendant's offer of certain stocks in payment, the plaintiffs' agent " objected to receive them," and that the defendant thereupon represented them as valuable, so as to induce the agent to receive them, it was *held*, that the statement that the agent objected, was material; and not being proved, the misrepresentation was not made out, the defendant not having any means, not open to the agent, of knowing the value of the property.

IN CHANCERY. The bill stated that on the 23d day of February, 1842, the plaintiff, Helen, then sole, placed her property, amounting to $8,453,39, in the hands of the defendant, to invest as he should from time to time judge best for the objects of the trust, and, when requested in writing by herself and Dr. Rufus Kittredge, pay and transfer the same to such person as they should appoint. The plaintiffs afterwards intermarried, and on the 10th of April, 1849, the proper parties ordered the fund to be paid to W. H. Y. Hackett, Esq.

That upon settlement with Mr. Hackett a balance of $9,100 was found in the hands of the trustee, for which it was agreed ;that his note for $2,000, and certain stocks, amounting therewith to $6,600, should be taken in part

payment; that for the balance of $500 the defendant proposed to transfer five shares of the Sullivan Railroad stock, "which said Hackett objected to receive." "That said George W. Kittredge thereupon answered said Hackett that said Sullivan Railroad stock was good property, and worth par, or $100 per share, and that said railroad was about paying a dividend, and that he had invested said Helen's money in said stock."

That Hackett, relying upon the representations of Kittredge, received the shares for the balance; that the stock was bad and unsafe, and such as no prudent person would have invested money in, and that the defendant well knew such was their character; and so the plaintiffs have been defrauded. Prays that the defendant may be decreed to pay the $500 and interest.

The answer admits the receipt of the property but denies that the amount is correctly stated in the bill. Admits the marriage and request to pay the fund to Hackett.

Denies that the settlement was in the manner set forth in the bill, and states it to have been as follows: Hackett is a person of reputed skill pertaining to money and stocks, is president of Piscataqua Exchange Bank, and a counsellor at law; and Rufus Kittredge was a careful, prudent and judicious man of business. That Mr. Hackett consulted with said Rufus Kittridge, and thereupon informed the defendant that he preferred to receive said Helen's property, partly in the defendant's notes, and partly in stocks, at prices to be agreed on; and they so agreeing, the defendant gave his note for $2,000, and transferred the stocks, and Hackett thereupon gave him a full discharge and release from all liability and accountability by reason of the trust. The five shares of the Sullivan Railroad were among the stocks conveyed, and he considered them of the value of $500. That he had not and did not represent that he had any means of knowledge as to their value, beyond the means possessed by other business men.

Denies that said Hackett objected upon any ground whatever to receive said shares, or that any question was made as to their value more than the rest.

To this there was a general replication, and proofs were taken, the purport of which sufficiently appears in the opinion of the court.

There were also other matters in the bill and answer which likewise appear.

*W. H. Hackett,* for the plaintiffs.

It appears that the said Helen's property remained in the defendant's hands a few months more than seven years. That said Helen and her uncle were dissatisfied with the conduct of the defendant, and ordered a transfer, and that the defendant was paid $100, or thereabouts, per year, for his services as trustee ; and at the time of the transfer there was but $900 out of more than $8,000, that remained invested as it was invested when the defendant undertook the trust; and that the five shares in the Sullivan Railroad have never paid any dividends from its earnings ; that it was, in 1849, and ever since has been, of little or no value. Who is bound by the law of the land to bear the loss of $500 and five years interest ?

1.   As the facts charged and admitted show that the defendant, in effect, had mixed the said Helen's property with his own, he is to be held accountable for the whole amount, with interest thereon. 4 Mad. Ch. Rep. 416 ; 3 Merrivale Rep. (ed. 1825,) 29.

2.   That as the defendant was under obligation to conduct his trust with fidelity, and was paid full and large compensation, he must bring his conduct within the rule, or be held responsible for all the property in his hands, with interest thereon.

3.   That the Granite Bank, from February, 1842, to April, 1849, the time said trust continued, being a sound dividend paying stock, said trustee was not justified in

Lawton *v.* Kittredge.

changing the investment of $500 from the bank into the Sullivan Railroad, and is liable for the fund lost by such change. *Howe* v. *Earl of Dartmouth*, 7 Vezey, jr. (Sum. ed.) 150.

4. That the investment in a railroad, at a great distance from the residence of the trustee, and in a part of the country between which and his residence there is little or no business intercourse, is out of the ordinary course of trust business, and calls for explanation, and excites in itself suspicion that due diligence and proper fidelity have not been used.

5. That the investing of money in a railroad in the process of building, is a breach of the duties, and an abuse of the powers of a trustee, justified by no precedent or principle, and for which this court will hold the trustee responsible, as other courts have in similar cases. In the settlement of a guardian's account in Massachusetts recently, it was held that a guardian has no right to invest the funds of his ward in new corporations which had not a fixed and permanent value.

6. That the purchase of a stock in a railroad which had paid no dividend, and had no settled character in the market, was in derogation of the rights of the plaintiffs, and in breach of the duty of the defendant as trustee. *Hancom* v. *Allen*, 2 Dick. 499.

7. That the discharge of the defendant by the plaintiffs' agent, having been procured by an erroneous statement of the character of the Sullivan Railroad stock, is void. The gist of the inquiry being, what was the conduct and representations of the trustee, and not what was the experience or capacity of the plaintiffs' attorney.

*H. F. French*, for the defendant.

WOODS, C. J. The only question that in fact arises upon this case, relates to five shares in the Sullivan Railroad. The settlement between Mr. Hackett and Mr.

*Kittredge* is not attempted to be impeached in any other respect; nor is the amount accounted for, namely, about nine thousand and one hundred dollars, controverted as being less than the amount due.

The parties do not agree as to the amount that went into Mr. Kittredge's hands in 1842. But that is now immaterial. By a compromise, the propriety of which is not questioned by either party, the sum found due was about $9,100, and it was settled for, according to the whole evidence, by the note of the defendant for $2,000, and stocks for the balance, and a receipt was given in full. And it appears, and is not disputed, that the stocks, at their par value, and the note, amounted to the sum of $9,100, due to the plaintiffs in the right of the wife, according to the estimation, and that the five shares in the Sullivan Railroad were included in the stock delivered.

The receipt shows that the settlement was regarded as full and complete, and it must remain, unless it is shown to be unfair or fraudulent, or to have been brought about by some mistake or misrepresentation.

The stocks in the Eastern Railroad and in the Boston and Maine Railroad were above par at the time, and yet were delivered, on the compromise, as at par. That fact is immaterial, except as it may render it more probable that the Sullivan Railroad stock was taken also at the risk of the parties for whose benefit it was received, and as confirming, or tending to confirm, the answer.

The question whether Mr. Kittredge had authority or not, to invest the funds of his *cestui que trust* in the shares of the Sullivan Railroad, is also immaterial in the state of the evidence. Indeed, we see no competent evidence upon which we can conclude that any part of it was so invested. The statement in the answer, on that subject, is gratuitous, and is not sustained by any proof.

And it may be safely said that if the testimony of Mr. Hackett stood alone in this case, it would stand clear of

doubt that the plaintiffs were entitled to a decree for the amount of the loss upon the five railroad shares, and interest, since it would appear from that testimony that the shares were taken by Mr. Hackett solely upon the representation of the defendant that the stock was a sound stock, good at par, and about to make a dividend; whereas Hackett himself knew nothing about the stock, and relied on the defendant's statements wholly, who assumed to know its value, whether he did or not. The representation, in such case, relied upon is equivalent to a warranty that the fact represented exists, and the party injured may take advantage of it as of a fraud.

But the great question in the case is as to the preponderance of evidence, according to the rule in equity upon this point. According, then, to the weight that properly belongs to the evidence, what was the character of the settlement?

It is conceded, on both sides, that it was a compromise; that the sum of $9,100 was found due from the defendant, and that stocks and a cash note were delivered to that amount; the stock being all reckoned at its par value, a portion of which was, in fact, worth more than par, and that a receipt was given by Mr. Hackett, the agent of the plaintiffs, in full for the amount due from the defendant to them.

The stocks, according to Mr. Hackett's testimony, were not delivered or received as being the same that had been purchased with the trust money. They were not regarded as upon that footing. How that was, the evidence furnished by the answer does not show.

In connection with this state of facts, and the evidence of Mr. Hackett, the answer of the defendant must be considered. The manner of the settlement is brought in conflict by it. The whole evidence upon the point of the final settlement and the manner of it, is derived from Mr. Hackett's deposition and the defendant's answer.

Mr. Hackett, in substance, says that the sum being fixed.

at $9,100 by the estimate, it was proposed to pay it by stocks and a cash note; and that a note and stocks were delivered, of a satisfactory character, except $500; and that five shares in the Sullivan Railroad were offered for that balance, but objected to by him, and finally taken upon the representations of the defendant, alone, that it was a good, sound stock, and about to make a dividend, whereas it was nearly worthless; and that Mr. Hackett was not advised as to the value and character of the stock otherwise than by Mr. Kittredge's representations, and that in accepting it he relied entirely upon those representations.

The answer, in effect, denies the manner of the settlement to have been as is set forth in the bill, and as stated by Mr. Hackett. It states that it was by a compromise, and denies that his note and the other stock were delivered for a specific portion of the sum of $9,100, and that a balance of $500 was due, for which the shares in the Sullivan Railroad were delivered in payment.

It states that Mr. Hackett, after advising with Rufus Kittredge, a friend of Mrs. Lawton, informed the defendant that he preferred to receive her property, partly in stocks, at prices to be agreed upon, and partly in the defendant's notes; and that they so agreed, and that the defendant transferred the stocks as agreed, and gave his note for $2,000, and that Mr. Hackett executed a release to him, and a discharge from all liability and accountability by reason of his trust, and that the five shares in the Sullivan Railroad were included among the stocks. That the defendant then considered them of the value of $500; but he had not, and did not represent that he had, any means of knowledge as to their value, beyond the means possessed by other business men, such as Mr. Hackett was. The answer further denies that Mr. Hackett objected to the Sullivan Railroad stock upon any ground, or that any question was made as to its value, more than as to the other stocks.

Now since there is no question of veracity between these

parties to be considered, but only the weight of proof, as we have seen, according to a technical rule of evidence,— that the court, namely, will not found a decree upon facts stated in the bill and denied in the answer, except these facts be proved by evidence over and above the testimony of a single witness,—it is necessary that we should consider how far the allegations in the bill, supported by the evidence of the only witness who testifies to the point, are denied by the answer.

It is alleged in the bill that Mr. Hackett objected to receive the five Sullivan Railroad shares. And this allegation is supported in terms by the testimony of Mr. Hackett. But the fact being denied by the answer of the defendant, and not otherwise supported by evidence, cannot, according to the rule adverted to, be taken as proved, for the purpose of the decree.

The bill further states that Mr. Kittredge, upon that objection being made, assured said Hackett that said Sullivan Railroad stock was good property and worth par, or $100 per share; that said road was about paying a dividend, and that he had invested said Helen's money in said Sullivan Railroad, and that said Hackett, trusting to the defendant's assurances, received said five shares for said balance. And the testimony of Mr. Hackett is to the same purport.

The fact of a representation, by the defendant, that the stock " is good property or investment, and is about to make a dividend," is not in terms denied by Mr. Kittredge.

But Mr. Hackett says that this representation was made to him in answer to an objection or question made by him as to the character of the stock, and to his objection to receiving it, on account of his doubt or ignorance as to its character. And such is the charge in the bill, and that the assurance was given by Mr. Kittredge in consequence of the objection, and that its effect was to remove that objection; while the answer distinctly denies that any such objection was made to the stock, involving, as we feel bound to con-

clude, a denial that the assurances were made either for the purpose, or with the effect indicated by the statements of the bill and by the testimony.

There is a very marked difference between a general assertion or observation upon a subject which the party making the observation supposed, and had reason to suppose, was equally well or better understood by the party addressed, and an assertion made for the express purpose of conveying information on a subject on which the listener had expressed himself uninformed, and made for the purpose, too, of influencing his conduct in a matter of business. In this view, the statement of the bill that Mr. Hackett at first objected to the Sullivan Railroad stock, as property with regard to which he was ignorant, and which, *for that cause*, he could not consent to take, for such is the fair import of the statement, becomes a very material and substantial element in the plaintiff's case. The proof of it seems to be absolutely indispensable for giving to the language which the defendant used in commendation of the property, the significance and weight attributed to it, and to charge the defendant with the grave consquences claimed in the bill.

It is not that a representation of the quality or value of a thing sold must always follow an objection or inquiry on the part of the purchaser, in order to charge the vendor, if untrue, for the cases show the contrary, and there would be no reason in such a rule. But it is necessary for the party complaining of the deceit, to prove that the language was used with an intent that it should be believed; that it was spoken not for the purpose of suggesting a rumor, a general impression, or the speaker's private opinion on a subject as to which the listener had precisely the same means of information, but in the way of assurance, and for the express object of making a representation.

It seems to us that the general publicity of all that the defendant could reasonably be supposed by Mr. Hackett to have known on the subject, should require the plaintiffs to

prove the very significant fact which they have stated in the bill, that Mr. Hackett did, in effect, intimate to Mr. Kittredge his ignorance, in order to show that Mr. Kittredge knew that he was addressing one who was relying upon his statements for a guide in a matter affecting a *cestui que trust*.

The fact stated in the bill and denied in the answer, is supported by no other evidence than the testimony of one witness, and cannot, therefore, be taken to be proved, as has been said, and, therefore, the statements respecting the language alleged to have been used by Mr. Kittredge, in reply to the objection, although proved, become, in the view we have taken, immaterial.

There is no ground, therefore, upon which the defendant can be charged with misrepresentation as to the value and character of the Sullivan Railroad stock.

Superadded to this, is the general denial in the answer of the allegation in the bill that the sum of $9,100 was found due. There appears to have been no settlement having that result for its object. Nor do the parties appear to have agreed upon any sum as due. The transaction appears, by the answer as well as by the testimony of Mr. Hackett, to have assumed the form of a proposition, on one side or the other, to transfer stocks to a certain amount and a note for $2,000, in full settlement. The allegations as to the manner and terms of the settlement, set forth in the bill, are substantially denied by the answer.

Many facts, not material to be considered, are alleged, but denied and not proved. Such is the case with regard to the amount of property originally received by the defendant.

A claim is made in the bill in relation to the stock in the Granite Bank. But upon the evidence of Mr. Hackett, it is not sustained, inasmuch as it shows that what was received was received for and in lieu of any and all stocks held in trust for the complainants. That stock became at

once, upon the adjustment that was made, the sole property of the defendant, even if shown to have grown out of the trust fund, which the evidence does not prove, as is alleged in the bill.

It must be holden that the complainants are bound by the doings of Mr. Hackett, as to all parts of the settlement, if in any; since a trade like that set up by the answer, which is averred to be but one transaction, must be all approved as binding on all, or wholly disapproved and repudiated, and the parties placed in *statu quo.*

It is denied that a balance of $500 was found due, as stated in the bill, after delivering the note and certain stocks; and that the value of the Sullivan Railroad stock was agreed upon as stated in the bill; and no evidence, sufficient in law to countervail the force of these denials, having been adduced by the plaintiffs, their case really stands where the settlement with Mr. Hackett and his acquittance or receipt left it, whether a case of compromise or of strict reckoning. The payment of part of the balance was in stocks, some of which appear to have been above, and others below the par value at which they were estimated and taken.

Without any proof as to the gain on the former or the loss on the latter, and whether, upon the whole, a loss has been sustained by the plaintiffs, and without any offer on their part in the bill to throw up the whole settlement, on the ground of the alleged fraud, we think, upon mature consideration, that, whatever may be the truth and justice of the case, and however just may be the claim of the plaintiffs, they have not, upon the allegations and proofs, entitled themselves to the relief sought, and that, therefore, their bill must be dismissed.

*Bill dismissed.*